**SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, Appellant,**

v.

**CITY OF HOPKINSVILLE, Kentucky, Appellee.**

Court of Appeals of Kentucky.

June 27, 1969.

Selden Y. Trimble, IV, Trimble, Soyars & Breathitt, Hopkinsville, for appellant.

Wendell H. Rorie, Alfred A. Naff, Hopkinsville, for appellee.

CULLEN, Commissioner.

This case adds another problem to the list of problems that have reached this court arising out of the property-tax-roll-back legislation of 1965 and 1966. This one involves taxation of public service companies for the years 1966 and 1967 only, as undertaken to be prescribed by Chapter 41 of the Acts of the 1966 General Assembly. Specifically in issue is the liability of Southern Bell Telephone and Telegraph Company for city taxes of the City of Hopkinsville for the year 1966. The city contended for an interpretation of Chapter 41 that would produce a *rate* of 51.3 cents and a total tax liability for Southern Bell of $16,928.73. The interpretation advanced by Southern Bell would produce a rate of 34 cents and a total tax liability of $11,285.82. The circuit court adopted the city's interpretation and entered judgment accordingly. Southern Bell has appealed.

The significant portions of Chapter 41 of The Acts of 1966 read as follows:

" * * * the city, county, and school district rates for the 1966 and 1967 tax year applicable to public service company property subject to local taxation shall be * * * "

"(a) That rate which will produce approximately the same amount of revenue from property of public service companies as was produced in the 1965 tax year * * *."

The practical problem arises out of the fact that Hopkinsville has a Municipal Electric Plant Board operating under the "T.V.A. Act," KRS 96.550 to 96.900, and under KRS 96.820 that plant pays to the city an "amount in lieu of taxes" which is computed by multiplying the *book value* of the property of the plant by the *current tax rate* of the city. Of course when *assessments* went *up*, after the decision in Russman v. Luckett, Ky., 391 S.W.2d 694, the *rates* went *down*. Thus, applying the low *rate* for 1966 to the book value of the electric plant, the amount to be paid by the plant in lieu of taxes for 1966 is considerably less than for 1965, when the city tax *rate* was *high*. This creates a loss of revenue for the city, unless Chapter 41 of the Acts of 1966 can be construed in such a way as to pick up the slack.

The city's contention, concurred in by the circuit court, is in substance that "public service company" as used in Chapter 41 of the Acts of 1966 should be construed to include the municipal electric plant. Thus the payments made by the plant board in lieu of taxes in *1965* would be counted in computing the total revenue received from "public service companies" in 1965, to fix the total amount to be produced in 1966, and the *book value* of the municipal electric plant would be included in arriving at the total 1966 *assessed value* of property of "public service companies" which would be divided by the total amount of revenue to be produced so as to establish the 1966 tax *rate*.

Southern Bell's contention is simply that "public service companies" as used in Chapter 41 of the Acts of 1966 means such companies as are *subject* to *taxation*. In effect, they say that clause (a) of the statute should be interpreted as if it read:

"(a) That rate which will produce approximately the same amount of *tax* revenue from property of public service companies *subject to local taxation* as was produced in the 1965 tax year *by taxes on such property*."

To us, Southern Bell's interpretation of the statute is so obviously correct that no elaborate analysis is called for. The statute plainly deals only with property subject to local taxation and with tax rates. The property of municipally owned utilities is not subject to taxation and those utilities do not pay taxes. The tax equivalent called for by KRS 96.820 may have been intended to be the equivalent in *amount of money* to a tax levy but it has none of the features of a tax.

It appears that the argument for the appellee city has nothing to support it other than the bare asserted proposition that the General Assembly, in the roll-back legislation, did not intend for any taxing unit to *lose revenues*, wherefore the intent must have been that any loss in tax-equivalent payments by municipal plants should be made up by the privately owned utilities. We think the blunt truth is that the General Assembly simply *overlooked* the effect the roll-back would have on tax-equivalent payments by municipally owned utilities. As far as any *expressed* intent is concerned the General Assembly was dealing only with *tax revenues*. Other sources of *income* were not touched, even by inference.

It is significant, we think, that when this problem was brought specifically to the attention of the General Assembly in 1968 it solved the problem for 1968 and future years by providing in substance, through an amendment to KRS 96.820, that the municipally owned utilities operating under the T.V.A. Act must pay, by way of tax equivalent, not less than they paid in 1965. The General Assembly gave no indication that it ever had any idea that Chapter 41 of the Acts of 1966 had any connection at all with tax-equivalent payments by municipally owned utilities.

The obvious purpose of Chapter 41 of the Acts of 1966 was to require public service companies to continue to pay the same taxes as they had before the adoption of 100-percent assessments, even though this meant that the companies were carrying

more than their fair share of the tax load because their property consistently had been assessed at a higher percentage of value than the property of other taxpayers. There were elements of unfairness in their thus being required to pick up part of the tab properly chargeable to other taxpayers. It is not reasonable to consider that the General Assembly would have intended to saddle the companies also with part of the load formerly borne by *nontaxpayers*.

The judgment is reversed with directions to enter judgment in conformity with this opinion.

MONTGOMERY, C. J., not participating.